# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| ANGELICA REYNA BARRON,<br>*Plaintiff*<br><br>-vs-<br><br>ANDREW SAUL, COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br>*Defendant* | EP-19-CV-00270-RFC |

## MEMORANDUM OPINION AND ORDER

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act. Both parties consented to trial on the merits before a United States Magistrate Judge, and the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of this district. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

On May 30, 2017, Plaintiff filed applications for DIB and SSI. (R:117-118.) Plaintiff's applications were initially denied on June 16, 2017, and denied again upon reconsideration on September 1 and September 6, 2017. (R:117-118, 139-140.) On January 26, 2018, a *de novo* hearing was held before an administrative law judge ("ALJ"); a supplemental hearing was held before the ALJ on June 14, 2018. (R:7, 36.) The ALJ issued an unfavorable determination on August 27, 2018. (R:141.) The Appeals Council vacated the ALJ's decision on November 30, 2018, and remanded. (R:158.) Subsequent to a third hearing held on March 11, 2019, the ALJ

issued a second unfavorable decision denying benefits on May 31, 2019. (R:48, 84.) The Appeals Council then denied Plaintiff's request for review on August 27, 2019. (R:1-5.)

## II. ISSUES

Plaintiff presents the following issues for review:

1. Whether the ALJ erred in determining Plaintiff's residual functional capacity;
2. Whether the ALJ erred in deciding that Plaintiff's impairments were not equal to a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1;
3. Whether the ALJ erred in creating and considering an "other evidence" category composed of his own observations during the hearing;
4. Whether the ALJ erred in performing the step five analysis.

(ECF No. 16:3-10.)

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir. 1984)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**B. Evaluation Process**

Disability is the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment(s) that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment(s) prevent the claimant from performing past relevant work; and (5) whether the impairment(s) prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(4).

An individual applying for benefits bears the initial burden of proving that he is disabled. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof at the first four steps. Once met, the burden will then shift to the Commissioner to show that there is other substantial gainful employment available that the claimant can perform. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.1988). If the Commissioner satisfies this burden, "the burden then

shifts back to the claimant to prove that he is unable to perform the alternate work." *Selders*, 914 F.2d at 618 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).

Here, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2017, the alleged onset date. (R:87.) At the second step, the ALJ found that Plaintiff had the following impairments which, in combination, were severe: diabetes mellitus (with neuropathy and retinopathy) and no vision in her right eye. (R:88.) The ALJ also found Plaintiff's high cholesterol, hypertension, kidney dysfunction, and obesity to be non-severe. (*Id.*) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R:89.)

Before the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to do light work. (*Id.*) Specifically, Plaintiff was found to be able to do the following: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to six hours in an eight-hour workday and sit for up to six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; "only frequently" climb ramps or stairs; and "only frequently" balance, stoop, kneel, crouch, or crawl. (*Id.*)

At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work. (R:93.) At the last step, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 16, 2017, through the date of the ALJ's decision. (R:94.)

## C. Analysis

### a. The ALJ did not err in his analysis of Plaintiff's RFC.

Plaintiff first argues that the ALJ erred in his analysis of Plaintiff's RFC. (ECF No. 16:3.) In particular, Plaintiff contends that the ALJ erred in failing to consider the effect of her diabetic neuropathy on each unique exertional and non-exertional factor separately.

Plaintiff is correct that Social Security Ruling 96-8p requires "that adjudicators consider the [exertional and non-exertional] capacities separately when deciding whether an individual can do past relevant work." But the ALJ discussed Plaintiff's history of diabetic neuropathy, and acknowledged that neuropathy causes "acute burning in the extremities." (R:91.) The ALJ noted that at a November 11, 2017, examination Plaintiff's "diabetes was stable ... [with] no cold or heat intolerance[.]" (*Id.*) Plaintiff's January 19, 2018, examination, which was also noted by the ALJ, yielded similar results. (*Id.*) Finally, the ALJ noted that Plaintiff was "formally assessed with a history of diabetic neuropathy, of no more than mild-to-moderate degree" on January 14, 2019. (*Id.*) The ALJ discussed the effect these conditions had on Plaintiff's ability to use her feet and found that Plaintiff had no other physical limitations. (*Id.*) This discussion by the ALJ demonstrates that he considered the effect that Plaintiff's neuropathy had on her exertional and non-exertional capabilities. Thus, the record shows that the ALJ considered Plaintiff's diabetic neuropathy in analyzing Plaintiff's RFC.

### b. The ALJ did not err in deciding that Plaintiff's impairments are not equal to a listing.

Plaintiff further argues that the ALJ erred when he decided that Plaintiff's impairments are not equal to a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix"). (ECF

No. 16:4.) Plaintiff argues that her diabetic neuropathy, diabetic retinopathy, and peripheral neuropathy qualify as disabilities under Appendix 1. (*Id.*)

As a preliminary matter, Plaintiff has not met her burden to show that her alleged diabetic neuropathy and peripheral neuropathy meet or equal a listing. 20 C.F.R. § 404.1520(d); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (Plaintiff has the burden of proof at step three of the sequential evaluation process). Plaintiff merely alleges, without providing any citation to the record or other authority to support her argument, that her impairments are equal to listings for diabetic neuropathy and peripheral neuropathy.

Plaintiff also contends that the ALJ erred in failing to consider whether her diabetic retinopathy rose to the level of a listing under Section 2 of the Appendix. (ECF No. 16:4.) But the ALJ did consider evidence of Plaintiff's vision loss and found that Plaintiff's condition did not equal the criteria of listings 2.02, 2.03, and 2.04. (R:89-92.) In particular, the ALJ found that Plaintiff retained vision in her left eye despite her diabetic retinopathy. (R:91.) Thus, the ALJ did not err in this regard.

Moreover, the ALJ's analysis of Plaintiff's impairments was proper under the Appendix. Under Section 6 of the Appendix, peripheral neuropathy may establish a genitourinary disorder, but "the peripheral neuropathy must be a severe impairment." 20 C.F.R. 404, Subpt. P, App. 1, § 6.00(C)(4). Peripheral neuropathy is a factor that, combined with other factors, establishes chronic kidney disease. *Id.* at § 6.05 B2. But peripheral neuropathy alone, absent other evidence, does not establish genitourinary disability. Peripheral neuropathy that causes certain extreme limitations may also establish a neurological disorder. *Id.* at § 11.04. Finally, peripheral neuropathy is also a factor that may establish a visual disorder (*id.* at § 102(A)(6)(a)), a digestive system disorder (*id.* at § 105), a neurological disorder (*id.* at § 11.01), or an autoimmune disorder (*id.* at § 114.02).

6

Diabetic retinopathy is likewise merely a factor in determining whether an applicant has a hematological disorder, an endocrine disorder, or a visual disorder. *Id.* at §§ 7.18, 9.00(B)(5)(a)(ii), 102.02(B)(1). Like peripheral neuropathy, whether retinopathy establishes a disorder within the meaning of Appendix 1 depends on the severity of the retinopathy. *Id.* General neuropathy, meanwhile, is a factor for evaluating the existence of an immune system disorder. *Id.* at § 114.00J.

Here, the ALJ discussed Plaintiff's history of diabetic and peripheral neuropathy and diabetic retinopathy in detail. (R:89-92.) The ALJ found that Plaintiff was formally assessed with a history of "mild-to-moderate" diabetic neuropathy and retained vision in her left eye despite her diabetic retinopathy. (R:91.) Moreover, the ALJ noted that at the March 2019 hearing Plaintiff wore glasses and "testified that she could see and read with her left eye." (R:93.) These findings are not disputed by Plaintiff; moreover, they accurately reflect the relevant objective medical evidence in the record. Thus, the ALJ's determination that Plaintiff's impairments are not equal in severity to any of the listings in Appendix 1 was supported by substantial evidence.

### c. The ALJ did not err in creating and considering an "other evidence" category.

Plaintiff next argues that the ALJ erred in creating and considering an "other evidence" category in denying Plaintiff's application. (ECF No. 16:5.) Plaintiff cites the Federal Rules of Evidence and the Social Security Act. (*Id.* at 6.) In particular, Plaintiff argues that the ALJ engaged in impermissible medical fact finding in relying on his own observations during the March 11, 2019 hearing. (*Id.*)

Plaintiff's reliance on the Federal Rules of Evidence is misplaced. "The Federal Rules of Evidence do not apply to the admission of evidence in Social Security administrative proceedings."

*Bayliss v. Barnhart*, 427 F.3d 1211, fn. 4 (9th Cir. 2005). Rather, "[t]he administrative law judge may receive any evidence at the hearing that he or she believes is material to the issues, even though the evidence would not be admissible in court under the rules of evidence used by the court." 20 C.F.R. §§ 404.950(c), 416.1450(c). Thus, the ALJ has broad discretion in deciding what evidence to consider, and the Federal Rules of Evidence do not limit this discretion.

Plaintiff is also incorrect that the ALJ impermissibly relied on his own observations during the March 2019 hearing. The regulations state that the Social Security Administration "will consider all of the evidence presented, including ... observations by our employees [e.g., an ALJ] and other persons." 20 C.F.R. § 404.1529(c)(3). "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). On the other hand, the "[a]dministrative law judge is not free to reject a disability claimant's complaints of pain solely on basis of personal observations made of claimant during the hearing; furthermore, he may not reject a claimant's subjective complaints of pain solely because the objective medical evidence does not fully support them." *Reinhart v. Secretary of Health & Human Services*, 733 F.2d 571, 573 (8th Cir. 1984).

Here, the ALJ wrote in his May 2019 decision, "[Plaintiff] alleged disabling numbness throughout her entire body (secondary to diabetes), yet I observed no discomfort or limitation of function. She sat comfortably throughout the entire hearing, showing no evidence of distress." (R:92.) Pursuant to the regulations sections discussed in the preceding paragraph, the ALJ properly relied on his own observations during the hearing. Plaintiff is correct that, if this were the sole basis for the ALJ's denial, remand would be appropriate. But the ALJ also supported his

8

decision with a detailed analysis of Plaintiff's medical history, which included complaints of numbness. (R:92-93.) Thus, the ALJ's reliance on his own observations during the hearing in conjunction with relevant objective medical evidence, was not erroneous.

Plaintiff also argues that the ALJ erred in considering Plaintiff's decision to quit working on the same day that her case was taken up for review by the Appeals Council. (ECF No. 16:6.) An ALJ "will consider all of the evidence presented." 20 C.F.R. § 404.1529(c)(3). "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1995). "[R]eturn to work is not dispositive of ... eligibility for a closed period of disability. [But] ... ability to work on a sustained basis ... [is] relevant." *Lee v. Comm'r of Social Sec.*, 248 Fed.App'x 458, 461 (3d Cir. 2007).

Here, the ALJ made the following observations regarding Plaintiff's work during the pendency of her claim: "Immediately after I [the ALJ] issued my August 2018 decision, denying her claim, she [Plaintiff] returned to work. However, immediately after the AC issued its November 2018 Remand Order, she stopped working. It appears that she stopped working for reasons unrelated to her alleged symptoms." (R:92.)

Plaintiff argues that the ALJ "cannot cite to any objective evidence to support this conclusion because it is contrary to the facts of the case." (ECF No.16:6.) But, as noted in the preceding paragraph, the ALJ did cite facts with regard to the timing of Plaintiff's work during the pendency of her claim. As the ALJ can and must consider all evidence before him, this Court finds that the ALJ did not err in weighing evidence of Plaintiff's attempt at work during the pendency of her claim. 20 C.F.R. § 404.1529(c)(3). This Court cannot reweigh the evidence, nor substitute its judgment for that of the ALJ. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989);

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). It was not clearly erroneous for the ALJ to find that the timing of Plaintiff's decision to quit working weighed against her credibility.

### d. The ALJ did not err in his step five analysis.

Finally, Plaintiff argues that the ALJ erred in his step five analysis. (ECF No. 16:7.) In particular, Plaintiff argues that the ALJ ignored the vocational expert's testimony, that the vocational expert improperly relied on the Dictionary of Occupational Titles ("DOT"), and that the ALJ erroneously failed to ask the vocational expert whether her testimony conflicted with the DOT. (*Id.* at 7-9.)

Plaintiff is incorrect that the ALJ ignored the vocational expert's testimony. In response to a hypothetical involving a person who "suffers from numbness throughout her whole body that just interferes with ... sustainability in the workplace," the vocational expert replied, "If numbness was ... to an extent that a person was not able to sustain work, I do not believe I would be able to identify any occupations[.]" (R:79.) This hypothetical portrays medical circumstances more extreme than those of the Plaintiff. Indeed, the ALJ found that Plaintiff had only experienced "acute burning in the extremities" and other symptoms of neuropathy for a short period of time in the fall of 2017, and later "unspecified lower back and right leg pain, and lower extremity edema" in the winter of 2019. (R:91.) Other than these two short periods of neuropathy-related symptoms, the ALJ found that the Plaintiff's "diabetes was stable ... [and Plaintiff had] negative endocrine findings includ[ing] no cold or heat intolerance" at examinations later in the fall of 2017 and throughout 2018. (*Id.*) Most importantly, the ALJ found that Plaintiff was formally diagnosed with "a history of diabetic neuropathy, of no more than mild-to-moderate degree" in the winter of 2019. (*Id.*) This indicates that through the hypothetical the vocational expert considered

10

symptoms more extreme than those of the Plaintiff. Thus, the ALJ did not err in his evaluation of the vocational expert's testimony.

Nor did the ALJ err in his reliance on the vocational expert's testimony incorporating the DOT. Plaintiff is correct that various appellate courts, most notably the Seventh Circuit in *Browning v. Colvin*, have expressed criticism of the DOT. 766 F.3d 702, 709 (7th Cir. 2014). But 20 C.F.R. § 404.1566(d) lists the DOT as a publication from which the ALJ may take administrative notice of reliable job information. "As a result of these regulations (and as the Seventh Circuit further observed in *Chavez*), 'the DOT is a source that VEs regularly canvass to identify job titles suitable for a claimant.'" *Ciara H. v. Saul*, 2019 WL 4573105, at *15 (N.D. Ill. Sept. 20, 2019) (quoting *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018)). Thus, the ALJ did not err when he relied on vocational expert testimony that was based upon the DOT.

Plaintiff argues that the vocational expert and the ALJ should have relied on the Occupational Information Network ("O*NET") in place of the DOT. (ECF No. 16:7.) "[W]hile the DOT appears on the list of governmental and other publications from which the agency can take 'administrative notice of reliable job information,' the O*NET does not." *Malfer v. Colvin*, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013). The ALJ did not err in his reliance on the DOT.

Plaintiff next argues that the ALJ erred by failing to ask the vocational expert whether her testimony conflicts with the DOT. Plaintiff is correct that Social Security Ruling 00-4p imposes an affirmative responsibility to inquire into any conflicts between a vocational expert's testimony regarding the requirements of a specific job and the information about that job in the DOT. Plaintiff is also correct that the ALJ did not ask the vocational expert about any conflicts between her testimony and the DOT. (*See* R:75-80.) However, Plaintiff alleges no inconsistencies between

the vocational expert's testimony and the DOT. Nor does this Court find any such inconsistencies. Moreover, "inconsistencies need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3rd Cir. 2005). Where, as here, there are no inconsistencies between the vocational expert's testimony and the DOT, the substantial evidence supporting the ALJ's decision remains untainted by any purported error.

It is also worth noting that Plaintiff's "counsel did not raise the DOT issue during the hearing and did not cross-examine the expert on her opinion regarding [Plaintiff's] residual functional capacity to perform the listed jobs." *Lopez v. Barnhart*, 33 Fed.App'x 705 (5th Cir. 2002). "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Barratt v. Astrue*, 2008 WL 2325636, at *2 (5th Cir. June 6, 2008) (per curiam, internal quotes omitted; quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)). Plaintiff therefore waived these issues by not raising them at the administrative hearing.

## IV. CONCLUSION

Substantial evidence supports the ALJ's RFC determination, the ALJ's evaluation of whether Plaintiff's impairments were equal to a listing, the ALJ's creation and consideration of an 'other evidence' category, and the ALJ's step five analysis. Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

**SIGNED** this 12th day of February, 2020.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE